NOT DESIGNATED FOR PUBLICATION

No. 128,972

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TIMOTHY STAHL,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; CHRISTOPHER ETZEL, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*Jay Norton*, of Norton Hare, LLC, of Overland Park, for appellant.

*Donald J. Cooper*, Kansas Department of Revenue, for appellee.

Before PICKERING, P.J., ISHERWOOD, J., and ANDREW M. STEIN, District Judge, assigned.

PER CURIAM: Timothy Stahl appeals the district court's decision upholding suspension of his driving privileges following his arrest for driving under the influence (DUI) of alcohol. He claims (1) he was denied a reasonable opportunity to obtain additional blood alcohol testing as required under K.S.A. 8-1004; and (2) inadequacies in the implied consent advisory given violated due process. After review, we find Stahl's arguments are unpersuasive, and we affirm.

1

In August 2022, Kansas Highway Patrol (KHP) Trooper Tyler Bartee stopped Stahl for speeding. During the interaction, the trooper detected the odor of alcohol and observed Stahl's slurred speech and bloodshot, watery, and glazed eyes. The trooper administered field sobriety tests, leading to Stahl's arrest for suspicion of DUI. Stahl registered a .135 blood alcohol concentration on a breath test.

After advising Stahl of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the trooper transported Stahl to KHP headquarters and provided him a notice of implied consent, i.e., DC-70. While Stahl followed along, the trooper read aloud:

"You have no right to consult with an attorney regarding whether to submit to testing, but after the completion of the testing, you may request and have the right to consult with an attorney and may secure additional testing.

"If you refuse to submit to and complete the test or tests, your driving privileges will be suspended for a period of one year.

"If you fail a test, your driving privileges will be suspended for a period of either 30 days or one year.

"Refusal to submit to testing may be used against you at any trial or hearing on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both.

"The results of the testing may be used against you at any trial or hearing on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both."

The trooper next asked Stahl to submit to a breath test. Stahl explained that he believed he had already taken a breath test and asked how the tests differed. The trooper explained the prior test occurred roadside, while the present test occurred at the KHP station. Stahl then stated, "Can I request a blood test?"

The trooper questioned Stahl, "You want to do a blood test? You want me to read you the form for a blood test and that's what you want to do?" Stahl clarified that he did not understand, and the trooper again requested a breath test. Stahl responded, "Explain to me the possibility of a blood test." The trooper restated his request for a breath test and informed Stahl that his options were either to consent to the breath test or refuse. Stahl stated his preference for a blood test and asked if it was "legible" to request one. The trooper replied, "Do you want to take a breath test?" Stahl attempted to again express his preference for a blood test, but the trooper interrupted, stating, "It's just a yes or no."

Next, Stahl asked if a refusal to take a breath test resulted in a license suspension even if he requested a blood test. The trooper stated, "I'm not asking about a blood test. I'm asking about a breath test. Will you take one, yes or no on that?" Stahl replied, "Well, if I'm looking at losing my license for a year, I guess so, but again, I'd rather take a blood test over a breath test." Stahl indicated that he was trying to understand the process and believed a blood test was an available option.

The trooper answered, "It's not what you're requesting; it's what I'm requesting. I'm requesting a breath test. That's what I am requesting. It's not an option. It's not a choice for you. You don't get to say, 'Oh, I'll [inaudible], oh, I'll do urine, I'll do blood.' I am requesting a breath test." Stahl clarified that the trooper's request was "over and above" the roadside breath test and asked, "So there's no option for a blood test?" The trooper again requested a breath test and commanded Stahl to "drop the blood and the urine."

Stahl consented to the breath test before reiterating his preference for a blood test. The trooper concluded the conversation by stating, "That's fine. You can have your opinion on what you'd rather have, but I'm requesting a breath test." Thereafter, Stahl did not request a blood test. The Kansas Department of Revenue (KDOR) suspended Stahl's driving privileges and restricted his license for a period thereafter. The district court affirmed the KDOR rulings.

Stahl appeals.

ANALYSIS

Stahl argues that the district court erred in upholding the suspension of his driving privileges for two reasons. First, Stahl claims the trooper denied him a reasonable opportunity to have additional testing. Second, Stahl contends that inadequacies in the given breath test advisory violated due process.

I.     *The trooper did not deny Stahl a reasonable opportunity to have additional testing.*

The Kansas Judicial Review Act, K.S.A. 77-601 et seq., governs a court's review of an administrative driver's license suspension, and the district court considers the matter de novo. K.S.A. 8-259(a). The party asserting invalidity of the agency action carries the burden of proof. K.S.A. 77-621(a)(1).

We review the district court's decision affirming a driver's license suspension to determine whether it is supported by substantial competent evidence. *Molina v. Kansas Dept. of Revenue*, 57 Kan. App. 2d 554, 557, 456 P.3d 227 (2019). Under K.S.A. 77-621(c)(7), an agency action must be supported "by evidence that is substantial when viewed in light of the record as a whole." Substantial competent evidence possesses both "relevance and substance that furnishes a basis of fact from which the issues can be reasonably resolved." *Molina*, 57 Kan. App. 2d at 557. When reviewing the district court's findings, we do not "weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019).

4

When an issue raised involves a legal question, however, our review of that legal question is unlimited. Statutory interpretation is a question of law. *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 118, 200 P.3d 496 (2009).

Stahl argues that the trooper denied him a reasonable opportunity to secure additional testing. While Stahl concedes that a person has no right to secure additional testing until after completion of the initial testing requested by law enforcement, he argues a person can request additional testing at any time. Stahl asks us to find that he requested additional blood testing before submitting to the trooper's requested breath test. He further asks us to find that the trooper's directive to "drop the blood and the urine" was a command not to make a subsequent request for additional testing and amounted to a denial of an opportunity for additional testing.

KDOR counters that both the person's right to request and to secure additional testing only arise after initial testing. We need not resolve the dispute over timing, however, because it is not determinative in this case. Instead, the result here turns on whether Stahl requested *additional* testing at all. As we discuss below, we find that the evidence supports the district court's determination that he did not.

The contours of a person's right to secure additional testing are set out by statute. Under K.S.A. 8-1001(c)(1), law enforcement officers shall provide oral and written notice to a driver suspected of driving under the influence that he or she has "no right to consult with an attorney regarding whether to submit to testing, but, after the completion of the testing, the person may request and has the right to consult with an attorney and may secure additional testing."

K.S.A. 8-1004 provides:

> "Without limiting or affecting the provisions of K.S.A. 8-1001, and amendments thereto, the person tested shall have a reasonable opportunity to have an additional test by a physician of the person's own choosing. In case the officer refuses to permit such additional testing, the testing administered pursuant to K.S.A. 8-1001, and amendments thereto, shall not be competent in evidence."

A law enforcement officer has no affirmative obligation to volunteer to arrange for additional testing; rather, the person subject to testing must request it. See *State v. Young*, 228 Kan. 355, 363, 614 P.2d 441 (1980) ("[I]t is not an obligation of the State to advise" of a person's right to obtain additional testing.); *State v. Kristek*, 14 Kan. App. 2d 77, 77-78, 781 P.2d 1113 (1989) (trial court's conclusion that officer must affirmatively ask defendant if he desired independent testing and make record of answer placed duty on officer that law did not require).

Under similar facts as here, another panel of this court determined that an ambiguous request for additional testing is insufficient, and a law enforcement officer has no obligation to clarify. *State v. Eichem*, No. 91,903, 2005 WL 2949404, at *6 (Kan App. 2005) (unpublished opinion). Following Eichem's arrest, the deputy read him the implied consent advisory notices. The deputy testified that Eichem then stated that he preferred to take a blood test rather than a breath test. After the deputy explained that he was only offering a breath test, Eichem submitted to the breath test. Eichem testified that he requested the blood test because he did not trust breath test machines and meant to invoke his right to have an independent test completed after the breath test. The district court adopted the deputy's version of events, finding Eichem merely stated his preference for a blood test, which was not a request for independent testing and the deputy had no duty to clarify. The district court denied Eichem's request to suppress the results of the State's breath test as a sanction mandated under K.S.A. 8-1004.

The panel affirmed the district court's denial:

"According to the district court, the defendant stated he did not trust the breath test machine and requested a blood test after Deputy Pfrang read the implied consent advisory notices to the defendant. The deputy explained the State was only offering a breath test, and the defendant submitted to the testing. The district court further found that the implied consent advisory notices explain the defendant may request additional testing and that the defendant never requested a test in addition to the test offered and administered by the State. The court reasoned that because the statute requiring law enforcement officers to inform a criminal defendant of the rights and liabilities attending the implied consent law does not require an officer to specifically inquire whether the defendant wishes additional testing, the statute places an affirmative obligation upon a criminal defendant to articulate a clear intent to seek additional testing. This was not done by the defendant's request to have a blood test instead of a breath test.

"The factual statements contained in the district court's determinations are adequately supported by the record. At the suppression hearing, Deputy Pfrang testified that, due to the context in which the defendant asked for a blood test, the defendant seemed to desire a blood test instead of the offered breath test but eventually resigned himself to taking only the breath test." 2005 WL 2949404, at *2.

Here, Stahl and the trooper had an extended back-and-forth regarding testing. During the discussion, Stahl repeatedly asked about the possibility of a blood test and ultimately indicated his preference for a blood test as an alternative to a breath test. After telling Stahl he did not have the option to pick which type of test he could submit to, the trooper directed Stahl to "drop the blood and the urine." Crucially, Stahl never indicated he desired a blood test in addition to the requested breath test.

Following the administrative hearing, the KDOR hearing officer found: "[Stahl] wanted blood test instead of breath. He was not seeking indep[endent] test." Subsequently, the district court found: "Mr. Stahl had a lengthy conversation with Trooper Bartee that he would rather take a blood test instead of Trooper Bartee's

7

requested breath test. Trooper Bartee kept reminding [Mr. Stahl] that he was not requesting consent to a blood test, but rather a breath test." The district court further found that "[t]here is no evidence before the Court that Mr. Stahl made any demands or requests for counsel or an independent test after taking the intoxilizer 9000 breath test *as required by statute*." (Emphasis added.)

The district court's legal conclusion regarding the effect of the timing of requests under K.S.A. 8-1001 was superfluous in light of its factual findings. The dispositive point here is that the district court found Stahl's request was for alternative testing. Even if we were to disagree with the district court's interpretation of K.S.A. 8-1001, it would not change the factual determination that Stahl requested only a blood test instead of the trooper's requested breath test. As in *Eichem*, Stahl failed to articulate a clear intent to seek additional testing.

We now address Stahl's two arguments regarding the effect of the trooper's directive to "drop the blood and the urine." First, the directive did not foreclose a subsequent request for additional testing. By the time the trooper gave the directive, the trooper had already read the informed consent advisories and requested Stahl submit to a breath test. Stahl, instead of giving or refusing consent to the request, repeatedly raised the prospect of taking a blood test as an alternative. The trooper's prior clarifications that Stahl did not have the option to choose an alternative had proven ineffective at prompting Stahl to consent or refuse. In this context, the trooper's directive was for Stahl to stop asking about blood or urine as an alternative to the requested breath test, not a prohibition of a request for additional testing.

Second, the directive did not amount to a denial of an opportunity to have additional testing. As we discussed above, Stahl carried the initial obligation to articulate a clear intent for additional testing. The trooper's duty to permit a reasonable opportunity for additional testing only arose upon such articulation and after Stahl completed the

8

breath test. See K.S.A. 8-1001(c)(1). Because Stahl's request for alternative testing was insufficient, the trooper's duty never arose.

Both the KDOR hearing officer's and the district court's findings that Stahl only requested alternative testing were supported by substantial competent evidence. Stahl was not denied a reasonable opportunity to secure additional testing because he did not articulate a clear desire for additional testing.

II.     *Stahl's substantive due process argument is legally untenable.*

Stahl next argues that the trooper's failure to warn him of the driver's license restriction violates substantive due process. Specifically, he claims that interlock device installation requirements and associated costs amount to deprivation of a "crucial property interest." Therefore, omission of the license reinstatement requirements from the breath test advisory "is unreasonable and deprives drivers of the ability to make an informed choice about whether to consent to a search or invoke his or her constitutional right under the Fourth Amendment [to the United States Constitution]."

The argument is fatally flawed on multiple grounds. Stahl attempts to graft a substantive due process challenge to postsuspension license restrictions into a Fourth Amendment consent inquiry. Along the way, he further attempts to inject a statutory right to be informed of certain consequences into the Fourth Amendment framework.

First, Stahl fails to adequately assert a substantive due process claim. Driving is not a fundamental right but "a regulated privilege." *State v. Heironimus*, 262 Kan. 796, 803, 941 P.2d 1356 (1997). As such, we review the applicable statutes, K.S.A. 8-1014 and K.S.A. 8-1015, to determine whether they "bear some rational relationship to a legitimate state interest." *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 663, 440 P.3d 461 (2019). If these statutes are reasonably necessary to effectuate the legitimate state

9

interest and not arbitrarily or capriciously applied, they are not invalid. See *Johnson v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 431, 448, 472 P.3d 92 (2020). While Stahl details the impact of the license restrictions on individuals, he fails to challenge the legitimacy of the state interest or that the statutes are reasonably necessary to effectuate the state interest. Further, he fails to argue that the statutes were arbitrarily or capriciously applied. Therefore, the claim must fail.

Next, even assuming the license restrictions "deprive[] a person of a crucial property interest," as Stahl alleges, it would not give rise to a duty for officers to disclose the restrictions prior to requesting a breath test. While drivers have the right to be informed of certain consequences for either failing or refusing a breath test, both the advisory right and its scope arise from statute. See K.S.A. 8-1001(c). In contrast, validity of consent under the Fourth Amendment turns on voluntariness, see *State v. James*, 301 Kan. 898, 909, 349 P.3d 457 (2015), not the individual being adequately informed of various consequences. Because K.S.A. 8-1001(c) does not require disclosure of restrictions to a driver's license, an officer has no statutory duty to do so. As to any constitutional concern, Stahl fails to set forth the voluntariness standard or make any applicable argument. Therefore, any claim regarding validity of Stahl's consent must also fail.

In summary, Stahl fails to attack the legitimacy of the state interest, the reasonable necessity of the statutes to effectuate the state interest, or the manner of the statutes' application, and he makes no showing regarding involuntariness in his consent. See *Johnson*, 58 Kan. App. 2d at 448. Further, he draws no legally relevant connection between the supposed substantive due process implications of the license restrictions and valid consent. We do not attempt to fill in the gaps left by Stahl's failure to adequately engage in either constitutional framework. See *State v. Hinnenkamp*, 57 Kan. App. 2d 1, 6, 446 P.3d 1103 (2019). Consequently, we are unpersuaded by his arguments.

Affirmed.